Joseph Pursglove, Jr., and Josephine L. Pursglove, His Wife, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 36435. Promulgated April 14, 1953.

*William J. Kenney, Esq.*, for the petitioners.
*James A. Anderson, Esq.*, for the respondent.

**OPINION.**

Murdock, *Judge:* The petitioner contends that the lease from Mc-Cormick, dated April 6, 1942, was property used in the trade or business of the partnership, within the meaning of section 117 (j), which was held for more than 6 months and the transfer of the coal lands covered by that lease was in fact and in law a sale of a portion of the lease to National so that the resulting gain was a long-term as opposed to a short-term capital gain. It may be assumed for the purpose of discussion that the lease was property used in the trade or business of the partnership held for more than 6 months, within the meaning of section 117 (j). It is clear, however, that the partnership did not, as the petitioner contends, sell a portion of that lease to National Steel Company. The argument of the petitioner in this connection is that since National furnished the $105,000 with which the partnership exercised its option to buy all of the properties covered by the lease of April 6, 1942, "a resulting trust arises in favor of the party furnishing the consideration" and "the holder of legal title then possesses his title solely as trustee and not as owner" with the result that "the conveyance of the coal by the partnership was a conveyance of property to which National Steel Company already possessed equitable title" and "Cornell Coke Company cannot be held to have realized capital gain on a capital asset, viz.: the coal, which it did not own and could not sell." It further states "All that Cornell Coke Company ever owned was the lease and option, and this is all that it sold."

The facts in the record clearly refute this contention of the petitioner. The coal lands which the partnership conveyed to National were not the only properties which it purchased from McCormick pursuant to the option. Instead, it purchased from McCormick, pursuant to the option, all of the properties covered by the lease of April 6, 1942, which included, *inter alia*, in addition to the coal acreage, over 300 acres of surface, 200 coke ovens and a substantial quantity of other property. The partnership, after becoming the owner of all of that property, conveyed only the coal lands to National. It is true that National furnished the $105,000 which the petitioner used to exercise the option, but that $105,000 was a part of the purchase price for the coal lands which the petitioner subsequently transferred and was then under contract to transfer to National. National acquired its title to the coal lands not by a resulting trust, but solely under the contract with and the deed from the partnership for a consideration of $240,535. The partnership never attempted or purported to sell and National never purported or attempted to buy an interest in the lease and option. The whole subject of the negotiations and sale between the partnership and National was the coal. Since this is the only argument made by the petitioner and the only apparent difference between the parties on this issue, the determination of the Commissioner is sustained.

The other issue raised by the petitioner is that his "loss on sale of an undivided interest in specific partnership assets of Cornell Coke Company is not a capital loss." He concedes that there are judicial decisions holding that a sale of a partnership interest is a sale of a capital asset and the resulting gain or loss is to be treated as capital gain or loss. He argues, however, that his case is to be distinguished from those because the partnership was created under the laws of West Virginia, which is one of the few states which has not enacted the Uniform Partnership Act and does not subscribe by statute to the entity view that a partner's interest in a partnership is limited to the right to receive his share of the surplus remaining after payment of debts. This Court holds that the sale of an interest in a West Virginia partnership results in the same tax consequences as did the sale of a partnership interest in the following cases and, upon authority of those cases, the petitioner's loss was a long-term capital loss as determined by the Commissioner. *Allan S. Lehman*, 7 T. C. 1088, affd. 165 F. 2d 383, certiorari denied 334 U. S. 819; *Dudley T. Humphrey*, 32 B. T. A. 280; *George R. McClellan*, 42 B. T. A. 124, affd. 117 F. 2d 988; *H. R. Smith*, 10 T. C. 398, affd. 173 F. 2d 470, certiorari denied 338 U. S. 818; *Shapiro* v. *Commissioner*, 125 F. 2d 532; *Estate of Daniel Gartling* v. *Commissioner*, 170 F. 2d 73; *Thornley* v. *Commissioner*, 147 F. 2d 416; and *Joseph L. Merrill*, 9 T. C. 291, affd. 173 F. 2d 310. Judge Learned Hand, in the *Lehman* case, *supra*, rejected the strict

theory of the common law that a partnership is no more than a joint ownership of the assets by the partners so that a sale by a partner of his interest in the firm is a sale of his interest as joint owner of each firm asset. He called attention to the facts that in equity and in bankruptcy, modifications had long since been imposed upon the rights and liabilities of the partners as the common law conceived them, the firm became for most purposes an entity and it was upon this structure that Congress fitted the taxation of partnerships, although it imposed a tax upon a separate partner. He further pointed out that "The Uniform Partnership Law codified this congeries of rights and obligations as it had developed; and made no substantial change, when it declared in so many words that 'a partner's interest in the partnership is his share of the profits and surplus'." He decided that case upon the basis of the law as it was before it was codified. It is not clear that the law of West Virginia is any different from the law on which the *Lehman* case was decided. Furthermore, Congress must have intended to tax all sales of partnership interests in a similar fashion regardless of the state in which they were made.

*Decision will be entered for the respondent.*