Estate of Thomas F. Cunningham, Deceased, Equitable Security Trust Company, Executor v. Commissioner.
Estate of Cunningham v. Commissioner
Docket No. 54094.
United States Tax Court
T.C. Memo 1955-296; 1955 Tax Ct. Memo LEXIS 41; 14 T.C.M. (CCH) 1144; T.C.M. (RIA) 55296; October 31, 1955
*41 John C. Reid, Esq., for the petitioner. Max J. Hamburger, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency in income tax of Thomas F. Cunningham, now deceased, for the year 1951 in the amount of $28,326.61. The sole issue is whether $50,000 received by decedent, Thomas F. Cunningham, during the year 1950 from Russell D. Ketcham and Paulina D. Ketcham in connection with the sale by decedent of an interest in his business constituted ordinary income, as determined by the Commissioner, or capital gains, as claimed by petitioner. Findings of Fact The stipulation of facts, with the exhibits attached thereto, is made a part hereof. Thomas F. Cunningham, hereinafter referred to as decedent, at and prior to his death on August 6, 1952, resided in Wilmington, Delaware, and he filed his individual income tax return and amended return for the taxable year 1951 with the collector of internal revenue for the district of Delaware. On May 5, 1949, the decedent entered into written agreements with Crucible Steel Company of America, hereinafter called Crucible, and also with Trent Tube Company, *42 hereinafter called Trent, manufacturers of steel products, under which he was to act as the exclusive sales agent of each of said companies for their products on all sales to the du Pont Company of Wilmington, Delaware, and its affiliated companies, as well as fabricators doing work for the du Pont organization. Under these sales agency contracts the decedent was to receive a commission of 5 per cent of the net price to the purchasers. Commissions were payable only after the goods sold had been shipped and payment received by the steel companies from the purchasers. Said agreements were to continue one year from date "and thereafter until terminated by either party on thirty days written notice." Both agreements were "personal to Cunningham" and were not assignable. The decedent conducted his sales agency business as a sole proprietorship until November 1, 1951, by which time the business was well established. On November 1, 1951, the decedent entered into a written partnership agreement with Russell D. Ketcham and his wife, Paulina D. Ketcham, under which a partnership called Cunningham & Company was created for the purpose of carrying on the sales agency business previously conducted *43 by the decedent. Under the partnership agreement the decedent therein assigned all interest in his sales agency contracts to the partnership and agreed to cause any new agency contracts to be issued to the partnership. Partnership profits were to be distributed 50 per cent to decedent, 25 per cent to Russell D. Ketcham and 25 per cent to Paulina D. Ketcham, and losses, if any, were to be borne accordingly. Among other provisions contained in the six and a half page partnership agreement were these: Recital that decedent had been engaged in the business of selling steel and steel products on a commission basis "and now because of the condition of his health" wishes to be relieved of many of the activities in connection with such business and desires to bring into such business as an equal partner Russell D. Ketcham. Decedent was to be managing partner and generally direct the activities and conduct of the partnership business, but only to devote thereto such portion of his time as the condition of his health would permit. Ketcham was to devote his entire time to the business. Mrs. Ketcham was to devote only such time to the partnership as "in her sole discretion she may determine *44 advisable through the channels of her social and business contacts." Martha G. Clark, then and for some time prior thereto an employee as secretary of decedent, was to be continued as an employee of the partnership so long as decedent "shall deem her employment for the best interest of the partnership." On November 1, 1951, decedent was suffering from a heart ailment and had prior thereto sustained two heart attacks. In November, 1951, upon the execution of the partnership agreement by decedent and the transfer by him of his business to the partnership, Russell D. Ketcham and Paulina D. Ketcham paid decedent therefor $50,000 which they obtained through the financial assistance of J. Simpson Dean, Mrs. Ketcham's father. Dean was interested in establishing Ketcham in business and he initiated and carried on much of the negotiations with decedent which began in the summer of 1951 for the purchase by the Ketchams of an interest in decedent's business. In the negotiations between decedent and Dean and Russell Ketcham, the decedent represented that at that time he had orders on his books, commissions due him somewhere in the neighborhood of $200,000. On the basis of an analysis prepared *45 by Minor E. Munsey, Jr., C.P.A., of orders which the decedent had on his books as of November 1, 1951, from du Pont Company and its subsidiaries, said orders, if filled, would have produced commissions payable to the decedent under his contracts with Crucible and Trent as follows: Trent
$51,302.30
Crucible
58,650.61
Total
$109,952.91
From and after November 1, 1951, the date the partnership Cunningham & Company was created, the business previously conducted by decedent as a sole proprietorship was conducted by the partnership. New sales agency contracts were issued by Crucible Steel and Trent Tube in the partnership name. Commissions on shipments under orders booked prior to the formation of the partnership as well as under new orders were received by the partnership and, after payment of the expenses of the business, were distributed to the partners according to the percentages set forth in the partnership agreement. Gross income, expenses and distributable net income thus determined were shown on partnership returns filed by the partnership on Form 1065. Decedent, and presumably the other partners, reported as income on his individual return his share of distributable *46 income shown on the partnership return. Partnership income as reported on partnership returns for the fiscal periods 11/1/51-12/31/51 and 1/1/52-8/31/52 was as follows: Fiscal Period
Fiscal Period
11/1/51-12/31/51
1/1/52-8/31/52
Commissions Received
$15,142.32
$43,627.81
Expenses
2,718.77
11,315.89
Net Profit
$12,423.55
$32,311.92
Distributable: Thomas F. Cunningham
$ 6,211.77
$16,155.96
Russell D. Ketcham
3,105.89
8,077.98
Paulina D. Ketcham
3,105.89
8,077.98
During the years 1950 and 1951 there was a severe shortage of steel products by reason of the Korean War Emergency, and a sellers' market existed in the steel business carried on by the decedent. Because of the difficulty in obtaining steel, customers would frequently enter orders far in advance of their actual needs and before they were sure they needed the steel. As a result, orders were frequently cancelled before delivery was made. On uncancelled orders specifications were often changed before shipment. All this made necessary a considerable amount of follow-up after an order was entered. The mere fact that an order was placed did not mean that shipment would take place. Even *47 after shipment, customers frequently rejected the goods. The decedent died suddenly from an acute coronary occlusion on August 6, 1952. After his death Mr. and Mrs. Ketcham purchased the decedent's interest in Cunningham & Company from decedent's executor and continued the business. In November 1951 the business of decedent was a going and prosperous business and had good will of undetermined value. In the deficiency notice herein the Commissioner determined that: "The sum of $50,000.00 received upon the sale of a 50 percent interest in the assets of a sole proprietorship and reported as a long-term capital gain on an amended return for the year 1951 is considered to be ordinary income." The $50,000 paid decedent in November 1951 by Russell D. Ketcham and Paulina D. Ketcham was in payment of their purchase of an interest in a going business and for their undivided one-half interest in the partnership of Cunningham & Company, and same did not represent mere payments by them for either the purchase of assets or a 50 per cent interest in commissions theretofore earned by decedent. Opinion The sole basis of respondent's contention here is that the $50,000 paid to decedent *48 by the Ketchams represented a payment made for the purchase of a 50 per cent interest in commissions earned by decedent, and hence is taxable to the petitioner as ordinary income. The evidence and record as a whole does not warrant such a finding, but on the contrary it clearly appears therefrom that the Ketchams purchased a partnership interest in a going business having a good will value and, together with decedent, continued to carry same on until decedent's death. The sale of a partnership interest in a business is a sale of a capital asset, and the resulting gain or loss is to be treated as a capital gain or loss. Joseph Pursglove, Jr., 20 T.C. 68. Decision will be entered for the petitioner.